*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DOWELL/MITCHELL, Minors.

UNPUBLISHED
December 21, 2023

No. 365412
Kent Circuit Court
Family Division
LC Nos. 21-051329-NA;
21-051330-NA

Before: RIORDAN, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating her parental rights to her children, MD and WM, under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(i). Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

In August 2021, petitioner, the Department of Health and Human Services, filed a petition asking the court to take jurisdiction over MD and WM and to terminate respondent's parental rights. Petitioner alleged that previously, in Iowa, respondent's parental rights to an older child had been voluntarily terminated due to concerns of physical abuse, that her parental rights to another child had been involuntarily terminated due in part to mental-health concerns, and that her parental rights to a third child had been voluntarily terminated as a result of respondent's continued mental-health concerns, domestic violence, criminal behaviors, and multiple unhealthy relationships with men. Subsequently, MD was made a temporary ward of the court in 2016 because of respondent's mental-health and concerns of environmental instability, and was successfully reunified with respondent. The August 2021 petition alleged that respondent had been investigated in April 2021 due to concerns of improper supervision and physical neglect. In particular, respondent had left MD and WM in the care of unsuitable individuals, including a man with a conviction of second-degree criminal sexual conduct on a person under the age of 13, a woman on the central registry for child abuse, and a woman (married to a convicted child sex offender) with an ongoing Child Protective Services (CPS) case relating to methamphetamine use. Eventually, MD would disclose that she had been sexually assaulted. The petition further alleged that respondent had an ongoing history of substance abuse, including the abuse of marijuana,

cocaine, and fentanyl. She had left a substance-abuse treatment facility against medical advice, and she also had mental-health issues, including a hospitalization for "suicidal ideation with a plan."

Respondent entered a plea of admission to the allegations in the petition. However, the goal was changed from termination to reunification. Based upon respondent's plea of admission, the trial court took jurisdiction over the children, and a case services plan was established. The identified barriers to reunification included substance abuse, emotional stability, employment, housing, and parenting skills. Respondent was provided with weekly random drug screens, substance-abuse therapy, mental-health counseling, a parent-engagement coach, case management services, a recovery coach to aid in substance-abuse relapse recovery, a woman's support group, and supervised parenting time. Her participation was inconsistent, in part because, during the case, she moved from Grand Rapids to Lansing and had to reestablish services in her new area. Additionally, she continued, throughout the proceedings, to test positive for marijuana. She stated that her marijuana use was for pain management, but she also acknowledged using it as a coping mechanism. Respondent also had multiple relapses where in which she abused cocaine. Housing and employment remained concerns throughout the case. Moreover, during parenting time, respondent sometimes engaged in rough play with the children, did not pay them equal attention, discussed plans for them to return to living with her, and would take photographs of their ears and feet that led the children to believe that there was something wrong with them.

As a result of respondent's lack of progress in rectifying the barriers preventing reunification, petitioner filed a supplemental petition seeking termination of respondent's parental rights. The hearing was initially scheduled for December 2022; however, because respondent appeared to be making progress, the hearing was adjourned for 90 days. Subsequently, in March 2023, the termination hearing was held. Following the hearing, the trial court found by clear and convincing evidence that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(c)(*i*), (g), and (i). It also found by a preponderance of the evidence that termination of respondent's parental rights would be in the best interests of MD and WM. Therefore, it entered an order terminating respondent's parental rights. This appeal by right follows.

## II. STATUTORY GROUNDS

### A. STANDARD OF REVIEW

Respondent argues that the trial court clearly erred by finding statutory grounds to terminate her parental rights. A trial court's finding of statutory grounds for termination of a parent's parental rights is reviewed for clear error. *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id.* at 296-297.

B. ANALYSIS

The trial court found statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (i). Termination is warranted under subdivision (c)(*i*) if:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . :

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination under MCL 712A.19b(3)(c)(*i*) is proper when "the totality of the evidence amply supports that [respondent] had not accomplished any meaningful change in the conditions existing by the time of the adjudication." *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). In this case, the initial dispositional order was entered in 2021 and the termination hearing was held in 2023. Thus, more than 182 days had elapsed.

Next, the conditions that led to adjudication were respondent's substance abuse, emotional instability, housing, employment, and parenting skills. As noted above, respondent was provided with a number of services to rectify those barriers. Substance abuse, however, remained a problem. Indeed, throughout the proceedings respondent continued to test positive for marijuana. Respondent complains on appeal that it is improper to consider her marijuana use because marijuana is legal in Michigan. Yet, the record in this case reflects that respondent was diagnosed with severe cannabis use disorder and it was recommended that she refrain from marijuana use. Additionally, there were concerns that using marijuana in combination with respondent's prescription medications could lead to a negative reaction which would cause a type of psychosis. The caseworker also expressed that marijuana was a concern because respondent was using it as a coping method when she felt stressed. Given the record, therefore, although marijuana is legal in Michigan, respondent's use of it raised legitimate concerns regarding her ability to safely parent her children.

Moreover, even if her marijuana use were not considered, the record also reflects that respondent continued to abuse cocaine. During the proceedings, she admitted to relapsing and using cocaine on multiple occasions. Indeed, in the month before the termination hearing—after she had received over 16 months of substance-abuse services—respondent tested positive for cocaine on two occasions. As with respondent's marijuana use, respondent reported that she used cocaine as a coping method. Respondent's substance-abuse therapist testified that respondent was making progress with her substance abuse and had, to her credit, immediately admitted her relapses and that she "does well in asking for help." However, the caseworker opined that because respondent had "gone six or seven or eight months with being sober," she would "need to see at least a year to a year-and-a-half of sobriety consistently before we would think about returning the children home just because of her consistent relapses after long periods of time." Given that the children had already been in care for approximately 18 months, the record supports the trial court's finding that respondent's substance-abuse barrier had not been rectified and that there was no

reasonable likelihood that it would be rectified within a reasonable time considering the children's ages.

With respect to respondent's mental-health barrier, the caseworker explained that respondent's participation in services varied throughout the duration of this case. She sometimes participated fully and other times she was "very inconsistent with her participation." The caseworker further explained that respondent expressed "that she does have some mental-health concerns for herself, as well as things that she wants to address in therapy. I know that through her therapists they continue to work on goals such as coping skills and appropriate communication, as well as working through her past." Respondent's substance-abuse therapist further testified that they continued to work on respondent's coping skills, including the use of coping skills that did not involve the use of marijuana. Finally, the record reflects that respondent attributed her most recent use of cocaine to being lonely, which allows for an inference that her mental-health struggles were ongoing. On this record, the trial court did not clearly err by finding that this barrier to reunification had not been rectified. Further, given the lengthy period during which respondent received services and her inconsistent participation in those services, the court did not clearly err by finding that there was not a reasonable likelihood that she would rectify the conditions within a reasonable time.

The court also did not err by finding that respondent's parenting skills continued to be a barrier to reunification. The caseworker noted that respondent had been offered 94 parenting time visits. She missed approximately nine, due to weather or illness. She also had the aid of a supportive visitation coach and completed a trauma-informed parenting class. Despite her fairly consistent attendance at parenting time and participation in the support services, concerns remained regarding her interactions with the children and their reactions to the parenting time. The caseworker explained that there continued to be a concern with forced affection and boundaries—respondent would tickle or hug the children "for long periods of time to the point where they are saying no, or wanting to get down." Further, respondent had taken photographs of the children's "fingernails or ears. And so sometimes that can cause the children to think that something is wrong with them, or that that is more detrimental to their health than what is perceived by adults." The caseworker further testified that there were some issues with respondent talking about when the children would return to her home.

In sum, although respondent participated (inconsistently) in the services offered and made some progress toward remedying the conditions that led to the adjudication, the trial court did not clearly err by finding that she continued to have substance-abuse problems, issues with her emotional stability, and problems with her parenting skills. Given the children's young ages, the length of time that they had been in care, and respondent's lack of progress despite her participation in services aimed at rectifying the barriers, the court did not clearly err by finding that it was not reasonably likely for her to rectify the barriers within a reasonable time.[1]

---

[1] We need not address the additional ground for termination. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009) ("Having concluded that at least one ground for termination

## III. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent next argues that the trial court erred by finding by a preponderance of the evidence that termination of her parental rights was in the best interests of MD and WM. We review for clear error a trial court's finding that termination of a parent's parental rights is in the best interests of the children. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

### B. ANALYSIS

"In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). At the best-interest stage of the proceeding, the trial court's focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2012).

In this case, the trial court found that the children needed stability and permanency. The court noted the 18-month wait that they had already endured was "enough for them" and that the same period should have been enough for respondent. The court added:

> I wasn't around when they gave you the extra 90 days, but I think [the lawyer-guardian ad litem's] point is just right on the money. If you know that something is coming in 90 days, you're going to—you're going to be the best you possibly can. You're going to put your best foot forward and you're going to do all those kinds of things. And two cocaine's isn't it. The relapse isn't it. The losses of jobs isn't it. The potential problem with income to be able to support yourself plus two kids. All those things are in jeopardy even though progress, as [respondent's lawyer] was very good to point out for you, is happening. It's just not happening enough for them. The pendulum is swinging if you will in their direction, at least from what I'm seeing in the evidence today.

On appeal, respondent argues that the trial court failed to consider her bond with the children. Yet, the record reflects that the bond had deteriorated as the case continued, and that they had developed a strong bond with their foster parents. Indeed, they were thriving in their foster placement, and their foster parents were willing to adopt. Moreover, although the court did not make explicit findings regarding the children's bond with respondent (or with their foster

---

existed, we need not consider the additional grounds upon which the trial court based its decision.").

parents), such findings are not mandatory. Rather, the bond between a parent and a child is only one factor that a court *may* consider when making best-interests findings.

Respondent also contends that the trial court did not separately address the best interests of MD and WM. Generally, a trial court "has a duty to decide the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App at 42. However, the court's failure to do so does not require reversal when the best interests of the children do not significantly differ. *In re White*, 303 Mich App at 715-716. In this case, the children were in the same placement and neither of them had significant needs that were different from one another; therefore, the trial court did not fail by making redundant factual findings as to each child.

We conclude that, on this record, the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of MD and WM.

Affirmed.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Michael J. Kelly